**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEAN KICHATAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| NORTHWEST HOME CARE, INC., | ) | |
| d/b/a ABCOR HOME HEALTH, INC., | ) | |
| ALLIED SKILLED CARE, INC., | ) | JURY TRIAL DEMANDED |
| ANDREW KULBACHNY, and | ) | |
| IGOR KULBACHNY, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Dean Kichatay ("Kichatay"), through its undersigned attorneys, for its Complaint against Defendants, Northwest Home Care, Inc. d/b/a/ Abcor Home Health, Inc., ("Northwest"), Allied Skilled Care, Inc. ("ASC"), Andrew Kulbachny ("Andrew"), and Igor Kulbachny ("Igor"), states and alleges as follows:

## NATURE OF THE CASE

1.      This is a case for unlawful interference of Plaintiff's rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, retaliatory discharge under Illinois common law, for unpaid wages and benefits in violation the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1 *et seq.*, and for breach of contract.

## PARTIES

2.      Plaintiff is an Illinois citizen.

3.      Northwest is an Illinois corporation with its principal place of business located in Chicago, Illinois. Northwest employed Kichatay from August 2014 until February 2017.

4.     ASC is an Illinois corporation with its principal place of business located in Chicago, Illinois. The same owners operate ASC and Northwest. ASC is the staffing agency for Northwest, and was the entity that paid Kichatay.

5.     Andrew Kulbachny is an owner of Northwest and ASC and acts as the Chief Executive Officer for Northwest.

6.     Igor Kulbachny is an owner of Northwest and ASC and acts as the Chief Financial Officer for Northwest.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this action arises under the FMLA. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants because they are Illinois corporations doing business in this state.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

10.     Kichatay is a former Northwest employee and certified public accountant with more than 15 years of experience.

11.     Northwest hired Kichatay on or about August 2014 as the Controller.

12.     On August 5, 2014, Kichatay signed an employment agreement with Northwest, which provided in relevant part that:

> The Company may terminate Employee's employment under this agreement for any reason or no reason whatsoever by providing written

2

> notice of termination to Employee, which notice shall specific the date
> of termination. In the event of such termination, the company shall pay
> Employee any accrued and unpaid Base Salary due to employee through
> the date of termination and a severance pay equal to three (3) times
> Employee's monthly Base Salary. **Exhibit A** at §1.6.3.

13.     Starting in November 2016, Kichatay complained to Igor about the lack of a payroll specialist at Northwest and instances where Igor had instructed supervisors to cut employees' overtime hours in violation of state and federal wage laws.

14.     On multiple occasion, Kichatay informed management that Northwest was violating Illinois Department on Aging ("IDOA") and Illinois Department of Human Services ("DHS") guidelines regarding financial reports.

15.     Kichatay confronted Andrew and Igor about falsely certifying inaccurate reports filed with the State of Illinois.

16.     For instance, Kichatay informed Andrew and Igor that a December 15, 2016 Homemakers Services report certified and filed by Northwest inaccurately stated that Northwest spends 77% of revenue on work cost categories pursuant to 89 Ill. Adm. Code 686.250 when the company actually spends only about 70%.

17.     In another instance, Kichatay informed Andrew and Igor about a June 30, 2016 for In-Home Services report certified and filed by Northwest inaccurately stated that Northwest spends a minimum of 77% of total revenues from the Department for client incurred expense for direct service worker costs pursuant to 89 Ill. Adm. Code 240.2020 when the company actually spends only about 70%.

18.     Kichatay confronted Andrew and Igor about Northwest's inaccurate reports in 2015 up to as recently as January 2017.

19.     On February 7, 2017, Kichatay sent an email to Max Lukachevich, Chief Operating Officer at Northwest, requesting time off to take care of his own personal mental health issues as well as his mother's mental health issues. Kichatay suffers from Major Depressive Disorder ("MDD"). Kichatay's mother suffers from depression and suicidal issues.

20.     Lukachevich responded to Kichatay's email telling Kichatay to take as much time as he needed.

21.     On February 8, 2017, Kichatay began his leave.

22.     Kichatay sought treatment for his depression symptoms at the Sleep and Behavior Medicine Institute ("SBMI") on February 16, 2017.

23.     On February 22, 2017, Dr. Serge Sorokin, a doctor of Clinical Psychology from SBMI provided a note explaining Kichatay's diagnosis of MDD and current enrollment in therapy for his depression. *See* **Exhibit B**.

24.     On February 23, 2017, Kichatay returned to work and provided Andrew and Igor with Dr. Sorokin's note.

25.     Andrew and Igor informed Kichatay that Northwest was denying his FMLA leave.

26.     The reason they gave for denying his FMLA leave is that he was "in the top 10% of wage earners" in the company.

27.     On February 24, 2017, Northwest terminated Kichatay by forcing him to sign a resignation prepared by Northwest which stated that he was resigning for personal reasons. Northwest threatened that if he did not sign the resignation letter, it would terminate him and provide a bad reference to any potential employers in the future.

4

28.     Northwest did not notify Kichatay at any time prior to his leave that it considered him a "key employee" or that his return to work after taking leave would cause the company substantial and grievous economic injury.

## <u>COUNT I</u>
### (Interference under the FMLA – against Northwest, Andrew, and Igor)

29.     Kichatay incorporates all prior paragraphs of this Complaint herein.

30.     At all times relevant, Northwest was an "employer" within the meaning of 29 U.S.C. § 2611(4)(A), in that Northwest engages in an industry affecting commerce and has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

31.     At all times relevant, Andrew and Igor were employers within the meaning of 29 U.S.C. § 2611(4)(A)(ii)(I), in that they are "person[s] who act[], directly or indirectly, in the interest of an employer to any of the employees of such employer under the FMLA."

32.     At all times relevant, Kichatay was an eligible employee under the FMLA, as defined in 29 U.S.C. §2611(2), in that Kichatay had been employed by the Defendant for at least 12 months and worked for at least 1250 hours during the previous 12 months.

33.     Kichatay was entitled to FMLA leave because he needed to care for his mother who was suffering from depression and suicidal issues, 29 U.S.C. §2612 (a)(1)(C), and because his own MDD rendered him unable to perform the functions of his position as Controller, 29 U.S.C. §2612 (a)(1)(D).

34.     Northwest, Andrew, and Igor interfered with, restrained, and denied Kichatay's exercise of his FMLA rights by refusing to authorize Kichatay's FMLA leave.

35.     As a direct result of Defendants' conduct as described herein, Kichatay has suffered lost wages and benefits of employment and has incurred attorney fees and the costs of this litigation.

36.     Defendants' actions were intentional, willful, and malicious and in reckless disregard of Kichatay's rights.

WHEREFORE, Kichatay prays that the Court enter judgment in his favor and against Northwest, Andrew, and Igor for damages, prejudgment interest, attorney fees and costs, and any further relief as the Court deems just and proper.

## COUNT II
### (Retaliatory discharge under common law – against Northwest)

37.     Kichatay incorporates paragraphs 1-28 of this Complaint herein.

38.     On February 24, 2017, Northwest discharged Kichatay when it forced him to sign a letter of resignation.

39.     Kichatay's discharge was in retaliation for his complaints about Northwest's violations of state and federal wage laws and illegally certifying and filing inaccurate reports with the State of Illinois.

40.     As such, Northwest's termination of Kichatay's employment was causally related to his protected activities.

41.     Northwest's termination of Kichatay's employment was therefore an illegal retaliatory discharge in contravention of Illinois public policy.

42.     As a direct and proximate result of Northwest's retaliatory discharge, Kichatay has suffered a loss of income in the form of wages and prospective retirement benefits, social security and other employment benefits, emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

43.     The above described conduct by Northwest was willful and wanton, and with reckless disregard and indifference to the law and the public policy of Illinois, and to Kichatay rights. Northwest should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

WHEREFORE, Kichatay respectfully requests that the Court enter judgment in his favor and against Northwest awarding him damages, punitive damages, prejudgment interest, the cost of bringing this action, and all such further relief as the Court deems just and proper.

## COUNT III
### (Violation of the IWPCA)

44.     Kichatay incorporates all prior paragraphs of this Complaint herein.

45.     Kichatay's employment agreement with Northwest states that he was a salaried employee when he functioned in his capacity as Controller.

46.     Section 5 of the IWPCA provides that "[e]very Employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

47.     Section 1.6.3 "Termination by Company Without Cause" of Kichatay's employment agreement with Northwest, states in relevant part that:

> In the event of such termination, the Company shall pay Employee any accrued and unpaid Base Salary due to Employee through the date of termination and a severance pay equal to three (3) times Employee's monthly Base Salary. Such amounts shall be paid on the date of the Base Salary otherwise would have been paid had Employee's termination not occurred. Exhibit A.

48.     Section 5 of the IWPCA also provides in relevant part that:

> Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary

> equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.

49.     To date, Northwest and ASC have failed to pay Kichatay's final compensation including his severance as provided in his employment agreement or his accrued vacation time.

50.     As a result of Northwest and ASC's willful refusal to pay to Kichatay his unused vacation time, Northwest and ASC are in violation of Section 5 of the IWPCA and have breached the employment agreement.

51.     In addition to his final compensation, Kichatay is entitled to statutory interest under 820 Ill. Comp. Stat. Ann. 115/14(a) provides that any employee not timely paid final compensation by his employer shall be entitled to recover through a civil action the amount of any such underpayments plus damages of two percent (2%) of the amount of any such underpayments for each month during which such underpayments remain unpaid. In such a civil action, such employee "shall" recover costs and all reasonable attorneys' fees.

WHEREFORE, Kichatay prays that this Court enter judgment his favor and against Defendants awarding him:

> A.     All final compensation owed;
>
> B.     Liquidated damages;
>
> C.     Attorney fees and costs as provided for by the IWPCA; and
>
> D.     Any further relief the Court deems just and proper.

### COUNT IV
**(Breach of contract under Illinois common law – against Northwest)**

52.     Kichatay incorporates all prior paragraphs of this Complaint herein.

53.     Kichatay's employment agreement with Northwest was a contract.

8

54.    Under that contract, if Northwest terminated Kichatay's employment without cause, Northwest was obligated to pay Kichatay "severance pay equal to three (3) times Employee's monthly Base Salary." **Exhibit A** at §1.6.3.

55.    Kichatay performed all obligations under the contract.

56.    Northwest materially breached the contract by terminating Kichatay without cause and then failing to pay Kichatay "severance pay equal to three (3) times Employee's monthly Base Salary." **Exhibit A** at §1.6.3.

57.    As a result of Northwest's breach, Kichatay has suffered damages in the amount of severance pay he did not receive from Northwest.

WHEREFORE, Kichatay prays that this Court enter judgment in his favor and against Northwest awarding him, damages, prejudgment interest, the costs of bringing this suit, and any further relief this Court deems just and proper.

## JURY DEMAND

58.    Pursuant to FRCP 38(b)(1), Plaintiff requests a trial by jury on all claims so triable.

DEAN KICHATAY

By: /s/ Peter S. Lubin
                 One of his attorneys

Peter S. Lubin
Vincent L. DiTommaso
Andrew C. Murphy
DiTommaso Lubin Austermuehle
17W 220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000
psl@ditommasolaw.com